UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA D. J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 21-CV-380-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** the case for further proceedings.

**I.     Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.     Background and Procedural History

The plaintiff filed a Title XVI application for supplemental security income on February 20, 2019. (R. 10). She alleged a disability onset date of May 30, 2018. *See id*. The plaintiff alleged disability due to chronic hepatitis B, post-traumatic stress disorder (PTSD), anxiety disorder, ganglion cyst in her dominant right hand, memory issues, and chronic fatigue. (R. 142). She was 38 years old on her alleged onset date. *Id*. The plaintiff holds a GED and attempted, but did not complete, certified medical assistant training. (R. 104). She lives with her teenaged children. She has no past relevant work.

The plaintiff's application was denied on initial review and on reconsideration. An Administrative Law Judge (ALJ) held a hearing via telephone on January 21, 2021. (R. 10). The plaintiff and a vocational expert (VE) provided testimony. (R. 93-139). The ALJ denied benefits in a decision dated March 30, 2021. The Appeals Council issued a decision on July 13, 2021 denying the plaintiff's request for review of the ALJ's decision. (R. 1-6). Following the Appeals Council's denial, the plaintiff timely filed a Complaint in this Court. (*See* Doc. 2). Accordingly, the Court has jurisdiction to review the ALJ's March 30, 2021 decision under 42 U.S.C. § 405(g).

### III. The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084.

At step one, the claimant must demonstrate that he is not engaged in any substantial gainful activity. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined Plaintiff had not engaged in substantial gainful activity since her application date of February 20, 2019. (R. 12).

At step two, the claimant must establish an impairment or combination of impairments that is severe. *See Lax*, 489 F.3d at 1084. Here, the ALJ determined that Plaintiff has severe impairments of chronic obstructive lung disease, cervical and lumbar radiculopathy,

3

anxiety, depression, PTSD, hepatitis B, and median neuropathy in the right wrist. (R. 12). The ALJ acknowledged the plaintiff's allegation of memory issues and chronic fatigue; however, the ALJ noted that these conditions are "symptoms as opposed to diagnoses," and found the alleged symptoms were not supported by medical signs or laboratory findings showing that a medically determinable impairment is present. (R. 13). The ALJ thus found the plaintiff's memory issues and chronic fatigue are non-medically determinable. *Id*.

At step three, the ALJ determines whether the claimant's severe impairment or impairments is equivalent to one that is listed in Appendix 1 of the regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404, subpt. P, app'x 1 (Listings). Here, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing, specifically noting Listings under Sections 1.00 (musculoskeletal system), 3.00 (pulmonary function), and 12.00 (mental disorders). The ALJ also discussed the "paragraph B" criteria—four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. *See* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found that Plaintiff has a moderate limitation in each of the four relevant domains—understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 13-14). Because Plaintiff does not have at least one extreme or two or more marked limitations, the ALJ found the paragraph B criteria are not satisfied. (R. 14).

4

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing work she has performed in the past. The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e); *see also Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023. Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

Here, the ALJ determined that the plaintiff has the RFC

> to perform less than the full range of sedentary work as defined in 20 CFR 416.967(a). The [plaintiff] should perform no work involving any exposure to extreme hot temperatures (over 90 degrees), extreme cold temperatures (under 30 degrees), or excessive humidity (over 80%). The [plaintiff] should have no exposure to pulmonary irritants. She can understand, remember, and carry out simple and detailed, but not complex, tasks (SVP 1-4). She should have no interaction with the general public (contact ok). The [plaintiff] can have occasional changes in work processes. She can have occasional interaction with coworkers and supervisors. The [plaintiff] should perform no tandem or teamwork; no climbing of ropes, ladders, or scaffolds; and only occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs. The [plaintiff] can frequently handle and finger with the right dominant upper extremity.

(R. 14-15). The ALJ found that the plaintiff has no past relevant work. (R. 21). However, citing the VE's testimony, the ALJ found that the plaintiff could perform alternative jobs existing in significant numbers in the national economy, including **clerical sorter** (sedentary exertion, unskilled, specific vocational preparation (SVP) level 2, DOT # 209.587-010, 53,000 jobs nationally) and **assembler** (sedentary, unskilled, SVP 2, DOT #

5

713.687-018, 56,000 jobs nationally. (R. 21-22). As such, the ALJ found the plaintiff not disabled at step five. (R. 22).

## IV.   Discussion

The plaintiff argues that the ALJ failed to properly (1) evaluate the medical opinions in the record and (2) assess the consistency of the plaintiff's subjective statements. The plaintiff's arguments primarily focus on her complaints and record evidence relating to her mental impairments. However, the plaintiff also contends the ALJ failed to support her finding that the plaintiff can perform work on a regular and continuing basis, in light of her respiratory impairment, fatigue, and other physical and mental impairments. The Commissioner contends that the ALJ properly evaluated the record evidence and substantial evidence supports the ALJ's decision.

### A.   Opinion Evidence

The ALJ must evaluate and "articulate . . . how persuasive [the ALJ] find[s] all of the medical opinions and all of the prior administrative medical findings" in a claimant's record. 20 CFR § 404.1520c(b).[1] The ALJ's decision must articulate how she considered the medical opinions or prior administrative medical findings from each medical source. *Id.* § 404.1520c(b)(1). The most important factors for the ALJ to consider are supportability and consistency, and the ALJ's decision must explain how she considered those factors in determining persuasiveness of a medical source's medical opinions or prior administrative

---

[1]   For claims filed after March 27, 2017, such as Plaintiff's claim here, the Commission does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinions." 20 C.F.R. § 404.1520c(a).

6

medical findings. *Id.* § 404.1520c(b)(2). The ALJ must also consider the medical source's relationship with the claimant, specialization, and other factors, but the ALJ's decision is not required to specifically address those additional factors. *Id.* § 404.1520c(c).

On July 9, 2019, Nancy Barton, Ph.D. examined the plaintiff on a consultative basis. As noted in the ALJ's decision, Dr. Barton reported that the plaintiff was casually dressed in clean clothing with adequate hygiene, but that she had difficulty breathing if she walked very long. (R. 17). The plaintiff told Dr. Barton that she could manage her own finances, perform household chores, grocery shop, and drive, and that she attends church and volunteers regularly. *Id*.

The plaintiff reported diagnoses of generalized anxiety disorder, panic attacks, and PTSD. (R. 672). She reported symptoms including hyperventilating in a crowd, irritability, and shutting down. Additionally, the plaintiff told Dr. Barton that she is forgetful and needs to be reminded of things often. She said that her brain can "just shut off" at times. (R. 673). She stated that she usually forgets things in a few days. *Id*. The plaintiff told Dr. Barton that she does not take any medication for her mental impairments because she has no insurance. However, she has previously received infusions for her liver that helped to relieve her panic attacks. *Id*.

Dr. Barton conducted a mental status examination. She found the plaintiff was oriented to person, time, place, and circumstance. The plaintiff's memory was tested by being taught four words and asked to recall them after five minutes. Dr. Barton stated the plaintiff "was unsuccessful with the first trial but successful with the second trial. After

five minutes, she remembered three of the four words." (R. 674). The plaintiff exhibited "a good memory for her own personal history." *Id*.

In testing the plaintiff's concentration, Dr. Barton noted that she was unable to name the months of the year in reverse order. She was able to count by sixes to sixty, using her fingers to count. In fund of knowledge, the plaintiff knew two out of the last three presidents but incorrectly stated there are 25 nickels in $1.15. *Id*. In terms of judgment, the plaintiff was asked what she would do if she smelled smoke while in a crowded movie theater, responding that she "would think something was on fire and would panic and look for a way out." *Id*. When asked what she would do with a stamped, addressed envelope she found on the ground, she said she would "stick it in the mailbox." *Id*.

Dr. Barton assessed the plaintiff's performance as "below normal limits for delayed verbal recall, attention and concentration, and judgment." (R. 675). Additionally, Dr. Barton reported that, on a screening instrument for cognitive impairment, the plaintiff's "performance was considered impaired when compared with other adults." *Id*. Dr. Barton opined that the plaintiff "is likely . . . able to perform some work-related mental activities, including her ability to understand and communicate. However, she may experience difficulty with memory, concentration, persisting with difficult tasks, and adapting to the demands of a work environment. She may be able to carry out simple instructions within a work setting." *Id*. Dr. Barton rated the plaintiff's social interaction ability as "fair to good," and overall her prognosis was also "fair to good." *Id*.

The other medical opinions in the record regarding the plaintiff's mental impairments are those of the state agency reviewing consultants, both of whom had access

8

to Dr. Barton's consultative examination report. On initial review, Joy Kelley, Ph.D. found that the plaintiff has a marked limitation in her ability to carry out detailed instructions. (R. 154). Dr. Kelley assessed an RFC that the plaintiff can "perform simple tasks with routine supervision." *Id*. She also found the plaintiff can relate to supervisors and peers on a superficial work basis with limited public contact and can adapt to a work situation. *Id*. On reconsideration, Joan Holloway, Ph.D. assessed a less restrictive mental RFC, finding the plaintiff can "understand, recall, and perform simple and detailed tasks of 3 to 4 steps and make related judgments." (R. 175).

The ALJ's decision noted the discrepancy between the initial and reconsideration DDS opinions. (R. 20). The ALJ stated that she found Dr. Holloway's RFC, encompassing 3- to 4-step tasks, "more supported" by the record, noting that the plaintiff "reported getting counseling once a week, but not taking psychotropic medications." *Id*. In explaining her decision to adopt the less-restrictive opinion of Dr. Holloway, the ALJ cited evidence that the plaintiff "reported getting counseling once a week, but not taking psychotropic medications." *Id*.

An ALJ is not required to accept a medical source's opinion; rather, the ALJ need only provide sufficient reasons for rejecting an opinion. *See Mays v. Colvin*, 739 F.3d 569, 574-76 (10th Cir. 2014). But an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

Here, the additional evidence reviewed on reconsideration by Dr. Holloway included March 2013 treatment records, when the plaintiff presented at 34 weeks

9

pregnancy with domestic assault injuries and pseudoseizure, and May 2018 treatment for an anxiety attack and pseudoseizure. It is not self-evident how the reconsideration evidence led Dr. Holloway to conclude that the plaintiff can perform detailed tasks and that her ability to carry out detailed instructions is only moderately limited. (R. 174-175). Thus, the ALJ's decision must provide good reasons for adopting a less restrictive mental RFC based in part on Dr. Holloway's report, while rejecting the more restrictive opinions of Dr. Barton and Dr. Kelley.

      The ALJ's decision attempted to explain why she rejected Dr. Kelley's opined limitation to "simple tasks with routine supervision," citing the plaintiff's weekly counseling and the fact that she does not take psychotropic medication. (R. 20). However, the ALJ's explanation is problematic. It is not clear how a lack of medication indicates that the plaintiff can perform detailed tasks or follow detailed instructions. Although the ALJ appeared to rely on the fact that the plaintiff was only receiving conservative treatment to manage her symptoms, the ALJ failed to acknowledge record evidence regarding the plaintiff's reasons for not taking medications for her mental impairments. In her consultative examination with Dr. Barton, the plaintiff cited a lack of insurance. (R. 673). During the ALJ hearing, the plaintiff was asked whether she takes prescription medication for her mental health conditions. She testified that she has been prescribed medication such as Xanax in the past, but that it made her tired and "completely . . . unemotional . . . unlike [her]self," and indicated that the side effects interfered in her relationship with her children. (R 121). However, the ALJ's decision did not acknowledge these reasons. As such, the ALJ's explanation regarding the different DDS mental RFC findings is insufficient.

10

Moreover, the ALJ's decision did not adequately explain why she rejected Dr. Barton's opined mental limitations. In fact, the ALJ confusingly stated that she found Dr. Barton's opinion "persuasive"—although "not specific regarding the degree of functional limitation." (R. 20). Yet Dr. Barton's opinion clearly states that the plaintiff only "may be able to carry out simple instructions." (R. 675). Thus, it was specific as to the degree of cognitive functional limitation. Inexplicably, however, the ALJ concluded that the RFC determination is "consistent" with Dr. Barton's opinion. (R. 20). But the RFC determination for "simple and detailed . . . tasks (SVP 1-4)" is clearly broader than Dr. Barton's opinion would support. Thus, it was also erroneous for the ALJ to characterize Dr. Barton's opinion as consistent with the RFC determination. As such, the ALJ's decision merits remand for additional consideration and discussion of the medical opinions in connection with the mental RFC determination.

### B. Subjective Statements

Plaintiff argues that the ALJ failed to properly evaluate her subjective statements regarding her fatigue, memory problems, and other symptoms. The plaintiff testified that she has problems remembering events from the day before, has excessive anxiety in crowds, and experiences fatigue and brain fog due to medications she takes for pain. (R. 15). She also related difficulty following instructions and completing tasks. (*See* R. 127-128). The ALJ's decision acknowledged the plaintiff's symptoms but found the alleged limitations are not fully supported by the medical and other evidence in the record. (R. 14-15).

A claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. § 404.1529(a). In assessing the intensity and persistence of a claimant's pain, the Commissioner will consider objective medical evidence and will "carefully consider any other information [a claimant] may submit about [their] symptoms." 20 C.F.R. § 404.1529(c). In evaluating such statements, an ALJ must consider: "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a 'loose nexus'); and (3) if so, whether considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)).[2] Consistency determinations "are peculiarly the

---

[2] While the Commissioner now describes the analysis as involving a two-step process, the current regulatory policy generally comports with the approach as outlined in previous cases, including *Luna* and *Keyes-Zachary*. *See Paulek v. Colvin*, 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). (Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."). In evaluating pain, the Commissioner considers factors including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of . . . pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
> (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
> (vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001) (ALJ's evaluation of symptom allegations "warrant particular deference"). However, the ALJ must explain "the link between the evidence and" consistency determination. *Kepler*, 68 F.3d at 391; *see also* 20 C.F.R. § 404.1529 (ALJ must provide "specific reasons . . . supported by the evidence in the case record"). Courts "will not upset such determinations when supported by substantial evidence." *Wilson v. Astrue,* 602 F.3d 1136, 1144 (10th Cir. 2010) (citing *Diaz v. Sec'y of Health & Hum. Servs.,* 898 F.2d 774, 777 (10th Cir. 1990)).

The plaintiff contends that the ALJ improperly ignored evidence that supports her alleged mental limitations. In light of the plaintiff's treatment records, as well as the consultative examination findings of Dr. Barton, discussed *supra*, the Court agrees. Notably, the ALJ concluded that, despite the plaintiff's report of needing to read written instructions repeatedly, and difficulty following spoken instructions, "[d]uring treatment, the [plaintiff] has had no memory impairments noted." (R. 13).

However, the plaintiff points to relevant evidence throughout her treatment at Improving Lives Counseling Services between August 2017 and August 2019. For example, treatment notes report Client Assessment Record (CAR) scores assessed during this period. The plaintiff points to scores in the "thinking/mental process" domain ranging

---

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c); *see also Keyes-Zachary,* 695 F.3d at 1167; *Branum v. Barnhart*, 385 F.3d 1268, 1273-74 (10th Cir. 2004) (quoting *Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991)) (describing several similar factors which should be analyzed).

from 36 to 41 on different occasions. (*See, e.g.*, R. 409, 691, 851, 932). According to Oklahoma Department of Human Services guidance, a score of 30-39 indicates moderate to severe impairment, meaning that "functioning in the particular domain is clearly marginal or inadequate, not meeting the usual expectations of current life circumstances." *See http://www.odmhsas.org/Client_Assessment_Record*.pdf. A score between 40-49 is deemed "incapacitating." *Id*. The plaintiff's treatment records also note "memory" as a "problem area" and indicate symptoms of agoraphobia and paranoia. (*See, e.g.,* R. 410, 932).

The ALJ's decision failed to discuss much of this evidence. Notably, it did not address the plaintiff's CAR scores during her counseling treatment. As such, the decision did not adequately address the evidence the ALJ rejected in discounting the plaintiff's subjective statements. In light of the RFC determination for understanding, remembering, and carrying out "simple and detailed, but not complex tasks (SVP 1-4)," a more thorough discussion of the relevant evidence is necessary. (R. 14). Thus, this error also warrants remand for the ALJ to more fully address the medical evidence relating to the plaintiff's alleged mental limitations. On remand, the ALJ should also further address whether these impairments, alone or in combination with her physical impairments, limit the plaintiff's pace or her ability to perform work on a continuing basis.

## V. Conclusion

For the reasons set forth above, the Court finds the ALJ's RFC determination is not supported by substantial evidence. Therefore, the decision of the Commissioner finding

Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 28th day of March, 2023.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge